# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **NATHAN PAUL JONES,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:13cv00005 |
| | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **CAROLYN W. COLVIN,**[1] | ) | |
| **Acting Commissioner of Social Security,** | ) | By: PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

## *I. Background and Standard of Review*

Plaintiff, Nathan Paul Jones, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that he was not eligible for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2011). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). As directed by the order of referral, the undersigned now submits the following report and recommended disposition.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rules of Civil Procedure Rule 25(d), Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Jones protectively filed his application[2] for DIB on May 9, 2007, alleging disability as of May 4, 2007, due to degenerative disc disease, nerve damage, arthritic spurs on the spine, persistent back and right leg pain and pain in his arms and hands. (Record, ("R."), at 206, 210, 234, 259.) The claims were denied initially and on reconsideration. (R. at 52-54, 57, 59-61.) Jones then requested a hearing before an administrative law judge, ("ALJ"). (R. at 64.) The hearing was held on October 6, 2009, at which, neither Jones nor his attorney was present.[3] (R. at 28-33.) A second hearing was scheduled to be held on August 1, 2011. (R. at 134-48.) By letter dated July 27, 2011, Jones's attorney indicated that neither he nor Jones would appear at the hearing. (R. at 173-74.) The ALJ, therefore, issued a decision without proceeding with the hearing pursuant to 20 C.F.R. § 404.948(b). (R. at 19.)

---

[2] Jones's DIB application is not contained in the record.

[3] Both Jones and his attorney waived the right to be present at the hearing. (R. at 92.)

By decision dated August 26, 2011,[4] the ALJ denied Jones's claim. (R. at 19-27.) The ALJ found that Jones met the insured status requirements of the Act through December 31, 2012. (R. at 21.) He found that Jones had not engaged in substantial gainful activity since May 4, 2007, the alleged onset date of disability. (R. at 22.) The ALJ determined that the medical evidence established that Jones suffered from severe impairments, including a back disorder and carpal tunnel syndrome, but he found that Jones did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22.) The ALJ found that Jones had the residual functional capacity to perform sedentary[5] work except for that which required climbing, crawling or standing/walking for more than 15 minutes in an hour up to a total of two hours in an eight-hour period. (R. at 22.) Thus, the ALJ found that Jones was unable to perform his past relevant work. (R. at 26.) Based on Jones's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that Jones could perform other jobs existing in significant numbers in the national economy, including jobs as an office addresser, a textile cutter and a cuff folder. (R. at 26-27.) Therefore, the ALJ found that Jones was not under a disability as defined under the Act and was not eligible for benefits. (R. at 27.) *See* 20 C.F.R. § 404.1520(g) (2013).

---

[4] By decision dated October 29, 2009, Jones was found not disabled based on his ability to perform a wide range of sedentary work. (R. at 19, 40-47.) Jones appealed, and, by order dated March 17, 2011, the Appeals Council remanded the matter for further evaluation of Jones's subjective complaints. (R. at 19, 48-50.)

[5] Sedentary work involves lifting items weighing no more than 10 pounds at a time and occasionally lifting or carrying items like docket files, ledgers and small tools. Although sedentary work involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2013).

After the ALJ issued his decision, Jones pursued his administrative appeals, (R. at 15), but the Appeals Council denied his request for review. (R. at 1-4, 6-9.) Jones then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2013). The case is before this court on Jones's motion for summary judgment filed July 26, 2013, and the Commissioner's motion for summary judgment filed September 27, 2013.

## II. Facts

Jones was born in 1962, (R. at 206), which, at the time of the ALJ's decision, classified him as a "younger person" under 20 C.F.R. § 404.1563(c). He has a high school education and past relevant work as a clothes turner, a die caster, a janitor and a log hewer. (R. at 211, 217.)

James B. Williams, a vocational expert, was present and testified at Jones's October 6, 2009, hearing. (R. at 30-33.) He classified Jones's past relevant work as a log hewer, a janitor and a die caster as unskilled and medium,[6] and his work as a garment turner as unskilled and light.[7] (R. at 30-31.) Williams was asked to consider a hypothetical individual of Jones's age, education and work history, who could occasionally lift items weighing 10 pounds and frequently lift items

---

[6] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If someone can perform medium work, he also can perform light and sedentary work. *See* 20 C.F.R. § 404.1567(c) (2013).

[7] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2013).

weighing five pounds, who could stand for two hours in an eight-hour workday, who could sit for six hours in an eight-hour workday, who should not crawl or climb ropes, scaffolds or ladders, who could occasionally bend, stoop and kneel and frequently reach, who should not work around heat, cold, fumes or dust, who would require breaks of 10 to 15 minutes at approximately two-hour intervals, who would miss 10 to 12 days of work annually and whose work should be routine and repetitive in nature. (R. at 31-32.) Williams testified that such an individual could perform sedentary work that existed in significant numbers, such as an office addresser, a textile cutter and a cuff folder. (R. at 32-33.)

In rendering his decision, the ALJ reviewed records from Dr. Jill K. Couch, D.O.; Lee Regional Medical Center; Dr. Marissa Vito Cruz, M.D.; Wellmont Holston Valley Medical Center; Dr. Ken W. Smith, M.D., a neurosurgeon; Dr. Anthony E. Holt, D.O., a neurologist; Lonesome Pine Hospital; Dr. Robert McGuffin, M.D., a state agency physician; Dr. Timothy S. Smyth, M.D.; Dr. Frank M. Johnson, M.D., a state agency physician; Dr. Joseph F. Smiddy, M.D.; and Michael Dorval, C.R.C., a licensed rehabilitation counselor.

On August 19, 2005, Dr. Marissa Vito Cruz, M.D., saw Jones for complaints of wrist pain. (R. at 333.) Dr. Cruz noted a hard nodule on the palm of Jones's right wrist. (R. at 333.) She diagnosed ganglion cyst of the right wrist and chronic low back pain secondary to degenerative disc disease. (R. at 333.) On October 20, 2005, Jones complained of back pain. (R. at 330.) X-rays of Jones's lumbar spine showed grade I spondylolisthesis at the L3-L5 levels. (R. at 330, 332.) Dr. Cruz diagnosed degenerative disc disease of the spine with chronic low back pain and mild spondylolisthesis. (R. at 330.) On December 19, 2005, Jones reported that his

pain was "somewhat better" since his medication had been increased. (R. at 328.) Dr. Cruz diagnosed degenerative disc disease of the spine with chronic low back pain and a bulging disc, mild spondylosis and ganglion cyst on the wrist. (R. at 328.) On January 25, 2006, Jones complained of back pain. (R. at 324.) X-rays of Jones's right wrist were normal. (R. at 326.) He was diagnosed with degenerative disc disease of the spine with chronic low back pain, lumbar radiculopathy, mild spondylosis and ganglion cyst on the wrist. (R. at 324.) On February 7, 2006, an MRI of Jones's lumbar spine showed a mild degree of degenerative change with signal alteration in the lower three disc spaces. (R. at 288.) No herniated disc or other abnormalities were noted. (R. at 288.)

On June 21, 2006, Jones complained of left index finger pain and back problems. (R. at 315.) Dr. Cruz noted that Jones had difficulty standing from a sitting position. (R. at 315.) She also noted that Jones had a cyst on his left index finger near the junction of the metacarpophalangeal, ("MCP"), joint. (R. at 315.) Dr. Cruz diagnosed chronic low back pain secondary to degenerative disc disease, ganglion cyst in the left MCP joint of the second digit, indigestion/heartburn and continued tobacco dependence. (R. at 315.) On July 21, 2006, Jones reported that his back pain seemed to be a "little bit better." (R. at 313.) An MRI showed some degenerative changes, but no herniated disc. (R. at 313.) He continued to complain of pain radiating down his right leg. (R. at 313.) Dr. Cruz noted that Jones had difficulty standing from a sitting position. (R. at 313.) Dr. Cruz diagnosed degenerative disc disease of the spine, chronic low back pain, mild spondylosis, ganglion cyst of the right wrist and chronic indigestion and heartburn. (R. at 313.) On August 21, 2006, Jones reported that the ganglion cyst on his wrist had improved dramatically, but he had a lesion in the webs of his fingers that was

steadily getting bigger. (R. at 312.) He reported that his pain was "somewhat well controlled" with medication. (R. at 312.) Dr. Cruz noted that Jones's hand showed a cystic lesion in the anterior digital web space between the second and third digit of the right hand, as well as knots on his fingers underneath the digits. (R. at 312.) She diagnosed chronic back pain secondary to degenerative disc disease, continued tobacco dependence, ganglion cyst of the right wrist, improved, and cystic lesion in the anterior digital web space. (R. at 312.)  On October 20, 2006, Jones was seen for follow-up regarding his chronic pain. (R. at 307-08.) The ganglion cyst in his wrist had resolved. (R. at 307.) He reported that he had pain in his right shoulder when he attempted to raise his arms above his head. (R. at 307.) He stated that his back pain was somewhat better. (R. at 307.) Dr. Cruz noted that Jones had positive impingement sign of the right shoulder. (R. at 307.) X-rays of Jones's right shoulder were normal. (R. at 309.) She diagnosed chronic back pain, secondary to degenerative disc disease, and right shoulder bursitis. (R. at 307.) On December 20, 2006, Jones reported that his wrist and hands were doing much better since his Lortab had been increased. (R. at 304.) He also reported that since he had been wearing his gloves, the pain in his extremities had not been much of a problem. (R. at 304.) Dr. Cruz  noted that Jones had a cystic lesion on his left index finger. (R. at 304.) She diagnosed chronic back pain, secondary to degenerative disc disease, and ganglion cyst on the left index finger. (R. at 304.)

On February 19, 2007, Jones complained of increased back pain since he began working for a logging company. (R. at 301.) Dr. Cruz diagnosed chronic back pain, secondary to degenerative disc disease, and ganglion cysts on the hands. (R. at 301.)  On April 20, 2007, Jones complained of his wrists and forearms "falling asleep." (R. at 298-99.) Dr. Cruz reported that, at times, she had seen

Jones's pain gradually go from "bad to worse." (R. at 298.) She noted that Jones had multiple ganglion cysts in his hands, secondary to trauma from his then-current job. (R. at 298.) She diagnosed bilateral carpel tunnel syndrome secondary to overuse type injury, chronic back pain, secondary to degenerative disc disease, and multiple ganglion cysts in his hands and wrists. (R. at 298.) On May 21, 2007, x-rays of Jones's right ankle were normal. (R. at 295.) On May 30, 2007, Jones underwent a nerve conduction study, which showed a normal electromyogram of Jones's muscles and findings suggestive of early sensorimotor peripheral neuropathy with segmental demyelinating features. (R. at 293-94.) On June 6, 2007, Jones complained of increased lower back pain. (R. at 289, 292.) Dr. Cruz noted that Jones had difficulty standing from a sitting position. (R. at 289.) She diagnosed acute exacerbation of chronic low back pain, secondary to severe degenerative disc disease. (R. at 289.) She excused Jones from work for at least two weeks. (R. at 292.)

On June 27, 2007, Jones saw Dr. Jill K. Couch, D.O. (R. at 400-02.) Dr. Couch diagnosed chronic lumbar radiculopathy, hypertension and gastroesophageal reflux disease, ("GERD"). (R. at 401-02.) On July 26, 2007, Jones complained of chronic low back pain with radiation down his right leg with numbness and tingling. (R. at 396.) Straight leg raising tests were positive on the right. (R. at 397.) He was diagnosed with lumbar radiculopathy, right lower extremity neuropathy, hypertension and GERD. (R. at 397.)

Jones saw Dr. Couch on five occasions in 2008. (R. at 420-28.) On these occasions, Dr. Couch reported that Jones was in no acute distress and that he looked well. (R. at 420, 422, 424, 426-27.) He had no swelling or effusion in his

joints. (R. at 420, 422, 424, 426-27.) He had tenderness at the L4-L5 level. (R. at 422, 424, 426-27.) Straight leg raising tests were negative and he had normal deep tendon reflexes and muscle strength. (R. at 422, 424, 426-27.) On December 6, 2008, a chest x-ray showed elevation of left hemidiaphragm with subsegmental atelectasis, or incomplete expansion, in the left lung base. (R. at 441.)

On January 16, 2009, Dr. Couch completed a Statement of Disability indicating that Jones was diagnosed with grade I spondylolisthesis at the L5-S1 level. (R. at 99-100, 449-50.) She noted that Jones had "retrogressed" and that he had not been released to return to work. (R. at 100, 450.) Dr. Couch noted that Jones had severe limitations of functional capacity and that he was incapable of minimal (sedentary) activity. (R. at 100, 450.) On February 2, 2009, a chest x-ray showed elevated left hemidiaphragm with atelectasis in the left base. (R. at 418.) A pulmonary function test showed severe restriction. (R. at 418.) Dr. Couch noted that Jones was in no acute distress, and he looked well. (R. at 418.) Jones had a normal gait, and no swelling or effusion was noted in his joints. (R. at 418.) He was diagnosed with hypertension, GERD, chronic low back pain, ongoing tobacco abuse, history of hypokalemia and severe restriction on pulmonary function test. (R. at 418.)

On April 3, 2009, Jones was alert and oriented. (R. at 102, 416.) He was in no acute distress and looked well. (R. at 102, 416.) He was diagnosed with hypertension, GERD, chronic low back pain, ongoing tobacco abuse, history of hypokalemia and severe restriction on pulmonary function test. (R. at 102, 416.) On April 20, 2009, Dr. Couch completed a Statement of Disability indicating that Jones was diagnosed with lumbar radiculopathy. (R. at 97-98, 447-48.) She noted

that Jones's condition had not changed. (R. at 98, 448.) She indicated that Jones had not been released to return to work and that he would never be released to return to work. (R. at 98, 448.) On August 2, 2009, Dr. Couch completed a Statement of Disability reporting that Jones was diagnosed with lumbar radiculopathy. (R. at 95-96, 445-46.) She noted that Jones's condition had not changed. (R. at 96, 446.) Again, she indicated that Jones had not been released to return to work and that he would never be released to return to work. (R. at 96, 446.) On September 3, 2009, Jones continued to complain of low back pain radiating into his legs with numbness and tingling. (R. at 506.) Dr. Couch reported that Jones walked with a limp and had trouble getting up onto the examining table. (R. at 506.) He had no swelling or effusion in his joints. (R. at 506.) He had tenderness at the L4-L5 level of the lumbosacral spine. (R. at 506.) Straight leg raising tests were negative, and he had normal deep tendon reflexes. (R. at 506.)

By letter dated September 30, 2009, Dr. Couch indicated that Jones suffered from multiple medical problems, including hypertension, GERD, right lower extremity pain with tingling and lower lumbar pain with muscle spasms and radicular symptoms. (R. at 93, 443.) An MRI showed grade 1 spondylolisthesis at the LS-S1 level and disc bulge at the L2-L3 and L4-L5 levels of the spine. (R. at 93, 443.) A chest x-ray showed elevated left hemidiaphragm with atelectasis, and a pulmonary function test showed severe restriction. (R. at 93, 443.) Dr. Couch noted that Jones had reduced his smoking habit. (R. at 93, 443.) She reported that Jones weighed 245 pounds and that his weight was a contributing factor to his multiple medical problems. (R. at 93, 443.) Dr. Couch noted that Jones had been treated symptomatically with medications and had followed all conservative treatments, including epidural steroid injections and physical therapy. (R. at 93, 443.)

On December 2, 2009, Jones complained of worsened low back pain radiating into his right leg with numbness and tingling. (R. at 502-03.) Dr. Couch reported that Jones was in no acute distress and that he looked well. (R. at 502.) He had no swelling or effusion in his joints. (R. at 502.) He had tenderness at the L4-L5 level of the spine. (R. at 502.) Straight leg raising tests were negative, and he had normal deep tendon reflexes. (R. at 502.) Dr. Couch reported that Jones had a difficult time standing from a sitting to a walking position. (R. at 502.) She also reported that he walked with a limp and used a cane. (R. at 502.)

By letter dated July 25, 2011,[8] Dr. Couch indicated that Jones could not tolerate any prolonged standing or walking and had to alter positions frequently. (R. at 204, 510.) She indicated that Jones needed to walk around for several minutes between positions to stretch and work out his pain, stiffness in his back and numbness in his lower extremities. (R. at 204, 510.) Dr. Couch reported that due to Jones's severe pain, general deconditioning, fatigue and effects of narcotic medications, he had poor endurance for any type of full-time work activity. (R. at 204, 510.) She noted no evidence of malingering or symptom magnification and stated that his complaints had been commensurate with clinical findings and observations. (R. at 204, 510.)

The record shows that Jones participated in physical therapy at Lonesome Pine Hospital from July 17, 2007, through August 16, 2007, for his complaints of low back pain, leg pain, lumbar degenerative disc disease and unspecified idiopathic peripheral neuropathy. (R. at 355-70.)

---

[8] This letter was prepared by Jones's attorney for Dr. Couch's signature. (R. at 203.)

On July 12, 2007, Dr. Ken W. Smith, M.D., a neurosurgeon, saw Jones for right lower extremity pain, tingling and lower lumbar pain. (R. at 338-45.) Examination of Jones's spine, ribs and pelvis revealed focal tenderness to the right of the lumbar spine with associated trigger points. (R. at 340.) No misalignment, asymmetry, crepitation, tenderness, masses, deformities or effusions were noted in the extremities. (R. at 340.) Jones had limited range of motion of the spine, ribs and pelvis. (R. at 340.) He had normal muscle strength and tone. (R. at 340.) Dr. Smith diagnosed lumbar degenerative disc disease without disc herniation, chronic low back pain, right leg pain with radiculopathy and unspecified idiopathic peripheral neuropathy. (R. at 340.) Dr. Smith noted that Jones was unable to return to work at that time. (R. at 341, 344.)

On May 28, 2008, Dr. Smith saw Jones for complaints of low back pain, right lower extremity pain and lumbar spasms. (R. at 437-40.) Examination of Jones's spine, ribs and pelvis revealed focal tenderness to the right of the lumbar spine with associated trigger points. (R. at 438.) Straight leg raising tests were negative bilaterally. (R. at 438.) He had normal muscle strength and tone. (R. at 439.) On June 16, 2008, Dr. Smith saw Jones for follow-up of right lower extremity pain, tingling and lower lumbar pain. (R. at 430-32.) Examination of Jones's spine, ribs and pelvis revealed focal tenderness to the right of the lumbar spine with associated trigger points. (R. at 431.) No misalignment, asymmetry, crepitation, tenderness, masses, deformities or effusions were noted in the extremities. (R. at 431.) Straight leg raising tests were negative bilaterally. (R. at 431.) He had normal muscle strength and tone. (R. at 431.) A lumbar myelogram showed grade I anterolisthesis at the L5-S1 level and slightly decreased filling of the L5 nerve root sleeves bilaterally. (R. at 434.) A CT scan of Jones's lumbar

spine showed L5 spondylolysis with grade I spondylolisthesis of the L5-S1 level, mild narrowing of the foramina, minor disc bulges at the L2-L3 and L4-L5 levels and a small intrasacral meningocele in the sacral area. (R. at 435.) Dr. Smith diagnosed lumbar degenerative disc disease with narrowing at the L4-L5 level due to a disc bulge, chronic low back pain, with musculoskeletal component, right leg pain, lumbar spondylolisthesis and unspecified idiopathic peripheral neuropathy. (R. at 432.) Dr. Smith noted that Jones was unable to return to work at that time. (R. at 432.)

On August 3, 2007, Dr. Anthony E. Holt, D.O., a neurologist, saw Jones upon referral from Dr. Smith for Jones's complaints of chronic low back pain with radiation into his right lower extremity. (R. at 350-54.) Jones reported that he was receiving "some relief" from physical therapy. (R. at 352.) He denied difficulty walking or weakness in his lower extremities. (R. at 352.) Jones denied muscle aches, joint pain, depression and anxiety. (R. at 353.) He had normal muscle strength and tone. (R. at 354.) Dr. Holt noted that Jones could walk on his heels and toes, but had a somewhat slow moving gait, secondary to pain. (R. at 354.)

On September 7, 2007, Dr. Robert McGuffin, M.D., a state agency physician, indicated that Jones could perform light work. (R. at 371-77.) He found that Jones's ability to push and/or pull was unlimited. (R. at 372.) Dr. McGuffin found that Jones could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 373.) He imposed no manipulative, visual or communicative limitations. (R. at 373-74.) Dr. McGuffin found that Jones should avoid concentrated exposure to hazards, such as machinery and heights. (R. at 374.)

On September 26, 2007, John Powell, P.A.-C., a certified physician's assistant, saw Jones for complaints of right lower extremity pain. (R. at 385-86.) Powell reported that Jones had normal range of motion of the cervical spine and good grip strength. (R. at 386.) Jones had adequate range of motion, normal muscle strength and intact sensation in his upper extremities. (R. at 386.) Powell reported that Jones had very little lumbar pain. (R. at 386.) Powell reported that he could not find anything abnormal on Jones's neurological examination. (R. at 386.) Jones also complained of pain and discomfort in his right lower extremity. (R. at 386.) Powell noted that Jones's feet were warm, and he had excellent pulses and plantar responses. (R. at 386.) Powell noted that he found nothing in the examination that indicated that Jones suffered from lumbar radiculopathy. (R. at 386.) He reported that nothing on the EMG studies confirmed a lumbar radiculopathy, and an MRI of Jones's lower lumbar spine showed only minor disc protrusions, no herniations or foraminal stenosis that would result in radicular pain. (R. at 386.) Powell diagnosed right leg pain of uncertain etiology. (R. at 386.)

On October 17, 2007, Dr. Timothy Smyth, M.D., saw Jones for complaints of low back and right leg pain. (R. at 383-84.) A lumbar epidural steroid injection and fluoroscopy was performed. (R. at 384.) Jones tolerated the procedure well. (R. at 384.) Dr. Smyth diagnosed lumbar radiculopathy and lumbar degenerative disc disease. (R. at 384.) On November 1, 2007, Jones reported that the epidural helped with his leg pain more than with his back pain. (R. at 379.) He reported that, because of the decreased leg pain, he had been more active, which contributed to his increased back pain. (R. at 379.) An MRI of Jones's lumbar spine showed mild degenerative changes. (R. at 379.) Dr. Smyth found no obvious reason for Jones's radicular-type pain. (R. at 379.) He diagnosed lumbar radiculopathy and lumbar

degenerative disc disease. (R. at 381.) On November 9, 2007, Jones reported that he was doing reasonably well. (R. at 378.) He reported that he continued to have back pain; however, his right leg pain had resolved. (R. at 378.) Dr. Smyth diagnosed lumbar degenerative disc disease and right lower extremity radiculopathy. (R. at 378.)

On February 12, 2008, Dr. Frank M. Johnson, M.D., a state agency physician, indicated that Jones could perform light work. (R. at 408-14.) He found that Jones's ability to push and/or pull was limited in his upper extremities due to bilateral carpal tunnel syndrome. (R. at 409.) Dr. Johnson found that Jones could occasionally climb, balance, stoop, kneel, crouch and crawl. (R. at 410.) He imposed no manipulative, visual or communicative limitations. (R. at 410-11.) Dr. Johnson found that Jones should avoid concentrated exposure to hazards, such as machinery and heights. (R. at 411.)

On October 1, 2009, Michael Dorval, C.R.C., a licensed rehabilitation counselor, indicated that, based on the limitations contained in Dr. Couch's September 30, 2009, report, Jones would be unable to perform both past relevant work and any other work on a full-time basis at a level consistent with substantial gainful activity. (R. at 268-72.)

On June 1, 2010, Dr. Joseph F. Smiddy, M.D., evaluated Jones for his pulmonary symptoms of coughing, wheezing, shortness of breath, exercise limitation and orthopnea. (R. at 453-54.) Dr. Smiddy reported that Jones had decreased breath sounds. (R. at 454.) Dr. Smiddy noted that Jones had a diagnosis

of prior pneumonia, left base atelectasis, COPD, prolonged smoking, obstructive sleep apnea syndrome and obesity. (R. at 454.)

## III.  Analysis

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2013); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520.  If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2013).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2011); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

Jones argues that the ALJ did not give his subjective complaints of pain and limitation sufficient consideration. (Memorandum In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 4-8.) Jones argues that the ALJ's decision is not based on substantial evidence in that the ALJ failed to obtain vocational expert testimony. (Plaintiff's Brief at 8-11.) Jones also argues that the ALJ erred by improperly disregarding the opinions of his treating physician, Dr. Couch. (Plaintiff's Brief at 11-14.) Finally, Jones argues that the ALJ erred by failing to consider his COPD when determining his residual functional capacity. (Plaintiff's Brief at 14-15.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion,

even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(c), if he sufficiently explains his rationale and if the record supports his findings.

Jones argues that the ALJ erred by failing to properly consider the effect of his pain on his ability to perform substantial gainful activity. I disagree. The Fourth Circuit has adopted a two-step process for determining whether a claimant is disabled by pain. First, there must be objective medical evidence of the existence of a medical impairment which could reasonably be expected to produce the actual amount and degree of pain alleged by the claimant. *See Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). Second, the intensity and persistence of the claimant's pain must be evaluated, as well as the extent to which the pain affects the claimant's ability to work. *See Craig*, 76 F.3d at 595. Once the first step is met, the ALJ cannot dismiss the claimant's subjective complaints simply because objective evidence of the pain itself is lacking. *See Craig*, 76 F.3d at 595. This does not mean, however, that the ALJ may not use objective medical evidence in evaluating the intensity and persistence of pain. In *Craig*, the court stated:

> Although a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers. ...

76 F.3d at 595.

In his decision, the ALJ noted that Jones's impairments could reasonably be expected to produce some of the symptoms that he alleged, his allegations regarding the intensity, persistence and limiting effects of his symptoms were not totally credible based on the record as a whole. (R. at 25.) Although Jones alleged that he experienced chronic back pain that affected his daily activities, his pain specialist found no evidence to explain his pain. (R. at 386.) Powell noted that nothing in his review indicated a lumbar radiculopathy and that the EMG studies did not indicate lumbar radiculopathy. (R. at 386.) Powell also noted that although Jones complained of severe pain, he did not seem to be in severe discomfort during the course of the evaluation, discomfort with movement was not observed, and he seemed calm and collected. (R. at 386.) Dr. Smith found that surgical interventions were not appropriate. (R. at 340.) Conservative treatment was recommended. In 2007, Jones denied muscle aches, joint pain, depression and anxiety. (R. at 353.) He had normal muscle strength and tone. (R. at 354.) Dr. Couch noted in 2008 that Jones was in no acute distress and that he looked well. (R. at 422, 424, 426-27.) He had no swelling or effusion in his joints. (R. at 422, 424, 426-27.)  He had tenderness at the L4-L5 level of the spine. (R. at 422, 424, 426-27.) Straight leg raising tests were negative, and he had normal deep tendon reflexes and muscle strength. (R. at 422, 424, 426-27.)  Again, in 2009, Dr. Couch noted that Jones had a normal gait and no swelling or effusion in his joints. (R. at 418, 502.) She did note that Jones walked with a limp and used a cane. (R. at 502.) For all of these reasons, I find that substantial evidence supports the ALJ's finding that Jones does not suffer from disabling pain.

Jones argues that the ALJ's decision is not based on substantial evidence. (Plaintiff's Brief at 8-11.) In particular, Jones argues that the ALJ should have elicited new vocational expert testimony because the hypothetical presented to the

vocational expert failed to include any specific limitations relating to his carpal tunnel syndrome and COPD. (Plaintiff's Brief at 4, 8-11.)

The ALJ found that Jones had the residual functional capacity to perform sedentary work, except for that which required climbing, crawling or standing/walking for more than 15 minutes in an hour and up to a total of two hours in an eight-hour period. (R. at 22.) The ALJ found that the medical evidence established that Jones suffered from severe impairments, including a back disorder and carpal tunnel syndrome. (R. at 22.) Based on my review of the record, I find that substantial evidence exists to support the ALJ's finding that Jones's diagnosis of COPD was not severe. Treatment notes indicate that Jones consistently denied chest pain and shortness of breath. (R. at 353, 390, 396, 422, 426-27, 431, 433.) In addition, Jones continued to smoke. (R. at 416, 418, 420.) Physical examination revealed unremarkable findings, including clear lungs. (R. at 416, 418.) The medical evidence suggested that COPD did not result in significant limitations as to constitute a severe impairment. *See* 20 C.F.R. § 404.1521(a).

I do not, however, find that substantial evidence exists to support the ALJ's findings that a significant number of jobs existed in the national economy that Jones could perform. Despite the ALJ's finding that Jones's carpal tunnel syndrome was severe, he failed to find that Jones had any limitations as a result of his carpal tunnel syndrome. In addition, the ALJ's hypothetical to the vocational expert failed to include any specific limitations relating to Jones's carpal tunnel syndrome. (R. at 31-32.) Jones was diagnosed with ganglion cysts in his hands on multiple occasions. (R. at 301, 304, 312, 313, 315, 324, 328, 333.) On April 20, 2007, Jones complained of his wrists and forearms "falling asleep." (R. at 298-99.) Dr. Cruz reported that, at times, she had seen Jones's pain gradually go from "bad to worse." (R. at 298.) He was diagnosed with bilateral carpel tunnel syndrome in

April 2007. (R. at 298.) In February 2008, Dr. Johnson, a state agency physician, noted that Jones would be limited in his ability to push and/or pull with his upper extremities due to bilateral carpal tunnel syndrome. (R. at 409.) The ALJ noted that Jones had carpal tunnel syndrome, but that the record reflected that treatment had been limited to use of wrist splints at night. (R. at 25.) Despite this, the ALJ found that Jones's carpal tunnel syndrome was severe. (R. at 22.) The ALJ failed to address the state agency physician's limitation based on Jones's carpal tunnel syndrome. The ALJ also failed to address any limitations that Jones would have based on this. Therefore, I cannot find that substantial evidence exists to support the ALJ's finding that Jones could perform a significant number of sedentary jobs.

Based on the above findings, I will not address Jones's remaining arguments. I find that substantial evidence does not support the ALJ's residual functional capacity finding, and I further find that substantial evidence does not support the ALJ's finding that Jones is not disabled and not entitled to DIB benefits.

## PROPOSED FINDINGS OF FACT

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.    Substantial evidence does not exist in the record to support the ALJ's physical residual functional capacity finding;

2.    Substantial evidence does not exist to support the ALJ's finding that a significant number of jobs existed in the economy that Jones could perform; and

3.     Substantial evidence does not exist in the record to support the ALJ's finding that Jones was not disabled under the Act and was not entitled to DIB benefits.

## RECOMMENDED DISPOSITION

The undersigned recommends that the court deny Jones's and the Commissioner's motions for summary judgment, vacate the Commissioner's decision denying benefits and remand Jones's claim to the Commissioner for further development consistent with this report.

## <u>Notice to Parties</u>

Notice is hereby given to the parties of the provisions of 28 U.S.C.A. § 636(b)(1)(C) (West 2006 & Supp. 2013):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable James P. Jones, United States District Judge.

The Clerk is directed to send certified copies of this Report and Recommendation to all counsel of record at this time.

DATED:     March 25, 2014.

/s/  *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE